ETHEL B. SEAVER, a married woman, by her next friend, VERNON C. SEAVER, and VERNON C. SEAVER, v. FRANCIS A. STRATTON.

183 So. 335.

Division A.

Opinion Filed December 18, 1937.

On Rehearing June 15, 1938.

*John M. Murrell, Wm. H. Malone* and *L. J. Cushman,* for Plaintiffs in Error;

*Maxwell Baxter* and *Wiseheart & Wiseheart,* for Defendant in Error.

TERRELL, J.—In April, 1926, Ethel B. Seaver and her husband, Vernon C. Seaver, sold a certain yacht named "Romance" to Francis A. Stratton for $25,000. Of this consideration, $18,611.11 was paid in cash and the balance of $6,388.89 was paid with a note executed to Stratton by Alfred D. Marsh and Marie D. Marsh, his wife, in 1925, as part payment for some real estate.

The note not having been paid, the Seavers brought this action on February, 1935, against Stratton to recover the face of the note with interest. After much pleading not essential to detail, the cause went to trial on the issue of whether said note was accepted by the Seavers as absolute payment for the balance due on the yacht or as collateral security therefor with the understanding that if not paid by the Marshes, Stratton would pay the amount named in the face of it to Seaver.

There was a third plea interposing the bar of the Statute of Limitations to which the plaintiffs proffered replications alleging that Stratton was out of the State when the cause of action accrued but that it was instituted within three years after his return to the State. On the issues so made, the cause went to trial. At the close of Plaintiff's testimony, motion for a directed verdict was denied. At the conclusion of the trial, the jury returned a verdict for the plaintiffs for the face of the note with interest. Motion for new trial was made and granted and to this order, the plaintiffs took writ of error.

Several questions are urged for reversal but all turn on the answer to the question of whether the Marsh note was accepted by the Seavers as absolute payment or as collateral security for the balance due on the yacht with the understanding that if not paid at maturity, Stratton would pay the face of it. The evidence shows that the Seavers made a straight out sale of the yacht to Stratton and that

he was to pay the full consideration for it. There is nothing to indicate that a trade or exchange of properties as against a sale was intended. Vernon C. Seaver testified positively that the Marsh note was taken as collateral to secure payment of the balance due on the yacht with the understanding that Stratton would pay the face of it if it was not paid at maturity. Seaver's testimony is corroborated by the fact that the Marsh note was given as part payment on some real estate, that two interest payments on it had been permitted to lapse, and that the boom period was past. No part of the mortgage securing said note was assigned to Seaver, Stratton had it (the mortgage) foreclosed and later brought a common law action to recover on the note. Seaver never pushed Stratton for the note as long as he (Stratton) was making an effort to collect it and there is substantial evidence which shows that both Seaver and Stratton considered the latter to be responsible for recovering on the note if it was not paid promptly.

To overcome the case made by Seaver, Stratton contends that the note was endorsed by him without recourse and was so accepted by Seaver, that coincident with delivery of the note, a bill of sale was executed and delivered with the yacht which symbolized receipt of the consideration and satisfaction therefor, that the Seavers agreed with Stratton that he (Stratton) should foreclose the mortgage, and that each should pay one-half the expense, one-half interest in the land covered by the mortgage was conveyed to Seaver and Company, a statutory trust for which Seaver was trustee and owned most of the interest. In the common law action, one of the notes was withdrawn with Seaver's consent. Stratton denied that the note was given as collateral and testified that it was given as payment in full.

It was the function of the jury to take this evidence and the facts brought out by it and from them, deduce their

verdict. The trial court has a broad discretion in the matter of setting the verdict aside and granting a new trial if error is shown to have been committed in the trial or some injustice done. To warrant an appellate court in reversing such an order, it must clearly appear that some settled principle of law was violated or that there was an abuse of discretion resulting in injustice.

The order granting the new trial shows that it was granted because the verdict was deemed to be contrary to the law and the evidence and because of error committed in denying defendant's motion for directed verdict at the conclusion of plaintiff's testimony. The motion for directed verdict was predicated on the following grounds:

"1. Because the testimony of the plaintiff clearly does not preponderate and prove a cause of action against the defendant.

"2. Because the evidence shows that the plaintiffs gave to the defendant a receipt, executed under seal, which is conclusive as to payment, there being no evidence as to fraud, ignorance, or mistake of fact, duress, or want of consideration.

"3. Because plaintiff, Vernon C. Seaver, admits the acceptance of the delivery of the note, endorsed by the defendant without recourse."

If there was substantial competent evidence in support of the verdict, whether or not it preponderated in favor of the plaintiff was not for the trial court to determine. Neither was it for him to determine under the facts of this case whether or not Seaver accepted the note without recourse or whether the bill of sale was a receipt in full for payment. There was evidence explaining why the note was endorsed without recourse and why the bill of sale was given with it and it was the province of the jury to pass

on the probative force of this evidence as well as resolve the explanations.

When the jury found that the note was accepted as collateral, it was not for the court in the absence of showing that it was misled, to order a new trial on the same facts. The verdict finds ample support in the record and the evidence is such that another jury could reasonably reach the same conclusion. We are aware of no rule of law warranting a new trial for the mere purpose of having a second jury to pass on the evidence.

When it is shown that the jury is deceived as to the force and credibility of or is influenced by illegal and improper evidence or influenced by considerations outside the evidence, the Court may set its verdict aside and grant a new trial but when nothing is involved but the sufficiency of and the probative force of the evidence, the trial court is under no circumstances warranted in pitting his judgment against that of the jury. It is an abuse of discretion to grant a new trial when the verdict finds ample support in the record and no illegal evidence is shown to have gone to the jury and nothing can be accomplished except to have another jury review the cause.

The law is settled that the giving of a promissory note in payment for articles sold or for any other valuable consideration is not payment therefor unless specially agreed by the parties to be so taken. It makes no difference whether the note is that of the party to the agreement or that of a third party or whether the debt was created at the time of the sale or some preceding time. Cowen v. Indianapolis Life Insurance Company, 116 Fal. 814, 157 So. 180; Gardiner v. Gorham, 1 Dougl (Mich.) 507.

In his order granting a new trial, the trial court gave his reasons therefor but said nothing about the question of whether or not plaintiff's cause of action was barred by the

statute of limitations, paragraph 5, Section 4663, Compiled General Laws of 1927. This provision of the statute is further limited by paragraph 4, Section 4648, Compiled General Laws of 1927, which is as follows:

"If, when the cause of action shall accrue against a person, he is out of the State, the action may be commenced within the term herein limited after his return to the State; and if after the cause of action shall have accrued he depart from the State, the time of his absence shall not be part of the time limited for the commencement of the action."

Stratton was a citizen of Mount Vernon, State of New York, but made frequent visits to Florida. The evidence shows that he was not in the State for three years after the cause of action on the note accrued. It shows that he was in the State at intervals from 1926 to 1935 inclusive, but the total time of his residence here during that period was less than three years. It appears that under the Statute as above quoted, the time he was absent from the State was not to be counted against him in tolling the three-year limitation.

The judgment is accordingly reversed with directions to enter final judgment for the plaintiff unless a motion in arrest of judgment or for judgment *non obstante veredicto,* shall be made and prevail.

Reversed.

WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.

ELLIS, C. J., dissents.

### ON PETITION FOR REHEARING.

PER CURIAM.—Petition for rehearing in this cause was granted and reargument thereon was permitted. We have re-examined and reconsidered the questions raised and find

no reason to recede from or modify our opinion filed December 18, 1937. It is accordingly reaffirmed on rehearing.

It is so ordered.

WHITFIELD, TERRELL, BUFORD and CHAPMAN, J. J., concur.

BROWN, J., dissents.