**MARTHA ALBERT, joined by her husband, ACEY ALBERT, v. MIAMI TRANSIT COMPANY, INC., a Florida corporation.**

| | |
|---|---|
| 17 So. (2nd) 89 | January Term, 1944 |
| February 22, 1944 | Division A |

*Perry A. Nichols* and *L. J. Cushman,* for appellants.
*Worley, Gautier & Cannon,* for appellee.

TERRELL, J.:

The appellant, a lady sixty-two years of age, was on January 6, 1943, employed at a laundry in Miami. On the latter date, she boarded a bus of appellee at 6 A.M. for the purpose of going to work. She tendered the bus driver a five dollar bill, requested one dollar's worth of bus tokens and the balance in change. The bus driver became angry, addressed

appellant very rudely, told her he had no change and that she would have to get off the bus. Appellant then rummaged through her hand bag, found some change, paid the fare, and took her seat on the bus. The bus driver continued his tirade, admonishing appellant that "anyone is a fool that will get on the bus at this hour of the morning with nothing but a five dollar bill."

Appellant explained to the driver that she had worked late the day before, had no chance to secure change and that she hoped he "would be caught out in the ocean with nothing but a five dollar bill." To this sally, the bus driver shouted, "Aw, old woman, why don't you wish in one hand and spit in the other and see which one fills up quickest." Appellant responded that if she were a man and had him off the bus, she would thrash the devil out of him. The driver stopped the bus abruptly and said, "I'll make a damn liar out of you right now," and commanded appellant to get off the bus. As appellant stepped off the bus in obedience to this command the driver slapped her face, broke her glasses, cut her nose, and gave her a general mussing up.

Several men jumped off the bus to back up appellant but after some verbal exchanges, a general fracas was abandoned, everyone got aboard and the bus proceeded on its course, but the driver continued to upbraid appellant for getting on the bus with nothing but a five dollar bill. When he had driven about two blocks, the bus collided with an automobile throwing the plaintiff and other passengers from their seats into the aisle against the seats and on top of each other, bruising appellant and other passengers severely.

Appellant as plaintiff brought this action against appellee as defendant claiming both compensatory and punitive damages. The trial resulted in a verdict and final judgment for $4500 in favor of the plaintiff. A motion for new trial was made and on consideration thereof it was granted "unless the plaintiff shall, within five days from date hereof, enter a remittitur of the verdict and judgment in the sum of $3000." This appeal is from the order granting the new trial. At the argument the question was raised as to whether or not the instant appeal was taken from a final judgment as

the rules require. We treat it as having been taken from the final judgment as amended.

Appellant contends that the judgment should be reversed because this is a common law action involving solely a claim for damages for personal injuries, that no question was involved but the probative force of the evidence, of which the jury was the sole judge and that the trial judge was without authority to pit his judgment against that of the jury which he undertook to do granting the new trial.

Against the contention of appellant, appellee contends that the requirement vel non of a remittitur is at all times within the sound discretion of the trial judge and unless there is shown some abuse of that discretion, his judgment should not be disturbed.

In Seaver v. Stratton, 133 Fla. 183, 183 So. 335, this Court approved the rule that in cases where nothing is involved but the sufficiency of and the probative force of the evidence, the trial court is, under no circumstances, warranted in pitting his judgment against that of the jury. This principle is so fundamental in our jurisprudence that it cannot be invaded by judicial discretion unless the verdict is so out of step with an amount that reasonable men could have reached as to shock the judicial conscience.

Judicial discretion is not an unleashed power by which a judge may set at naught the rights of parties to a cause and define them as suits his will or the will of others who may seek to influence his judgment. Judicial discretion is a discretion guarded by the legal and moral conventions that mold the aceptable concept of right and justice. If this is not true, then judicial discretion, like equity, will depend on the length of the judge's foot, the state of his temper, the intensity of his prejudice, or perhaps his zeal to reward or punish a litigant. It takes more than a woolsack and a judicial robe to dehumanize human characteristics that are rehumanized each biennium. Barber v. State, 5 Fla. 199. It was the unguarded discretion of the judge that Lord Camden declared to be an absurdity, the law of tyrants, different in every man depending on his constitution, temper, and passion, in the

good judge, the product of caprice, and in the bad judge the product of every vice and folly that man is heir to.

We are not unmindful of the rule that the trial judge may entertain a motion for new trial upon the ground that the verdict is excessive or whether or not liability in law clearly appears. On such motions the Court has the power to pass on the legal effect of the evidence or lack of evidence to support the verdict but if there is substantial legal evidence, its probative value is a matter for the jury and the court cannot invade their province, unless the verdict is so excessive and out of line with the damages proven as to shock the judicial conscience.

In a case like this, compensatory damages restore to the plaintiff the sums paid out for doctors, nurses, and drug bills, her loss of earnings present and prospective; they also contemplate compensation for humiliation, mental pain and suffering, and any other expenses she may have been caused as the result of the assault. If the jury find the assault to have been aggravated or inherently injurious to the plaintiff or to have been such as the law in terms declares injurious, they may allow her over and above compensatory damages, a sum for punitive or exemplary damages as punishment for the wrong inflicted.

The law has committed the quantum of damages in such cases to the wisdom of the jury and has awarded them a liberal discretion in so doing; compensation for humiliation and mental pain and suffering are not susceptible of accurate determination but rest entirely in the discretion of the jury. Factors growing out of the case and their concept of individual right and dignity may guide them in reaching their judgment. For all the record discloses, the bus driver provoked the row in this case. The plaintiff boarded the bus clothed in the conventional habilaments of a working lady. True she did not always lack for a retort but she was devoid of slacks, a cigarette, a chew of tobacco, a line of profanity or any other embellishment calculated to agitate the ire of a driver whose traveling etiquette was cut from twentieth century patterns. In the diggings where this Court was nourished and cultivated, for a man to assault a woman in the manner

shown here would have been tantamount to rape of the social mores and would have provoked a race between the law and other agencies to meet out punishment.

In this case, there were conflicts in the evidence but the jury believed the story as related in the forepart of this opinion. It was composed of men of approved integrity who were unusually well qualified to measure the damages in such cases. A claim for damages was proven and when this hurdle was passed, the amount was peculiarly a jury question. The amount awarded in the light of the revealed facts, does not shock our conscience and should not be disturbed, there being no showing of prejudice, bias, or improper influence.

The final judgment as amended is therefore reversed with directions to the trial court to enter judgment for the full amount of the verdict.

Reversed.

BUFORD, C. J., CHAPMAN and ADAMS, JJ., concur.